UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

DENZIL E. BISSEY,                              )
Social Security No. XXX-XX-9366,               )
                                               )
              Plaintiff,                       )
                                               )
       v.                                      )        2:13-cv-369-WTL-WGH
                                               )
CAROLYN W. COLVIN,                             )
Acting Commissioner of Social Security,        )
                                               )
              Defendant.                       )


**REPORT AND RECOMMENDATION ON
APPROPRIATE DISPOSITION OF THE ACTION**

This action is before me, William G. Hussmann, Jr., United States

Magistrate Judge, pursuant to Judge Lawrence's order.  (Filing No. 34.)

Plaintiff Denzil Bissey seeks judicial review of the Social Security

Administration's final decision, which deemed him able to work and therefore

ineligible for Disability Insurance Benefits and Supplemental Security Income.

The matter is fully briefed.  (Filing No. 29; Filing No. 35; Filing No. 36.)  Being

duly advised, I **RECOMMEND** that the Court affirm the decision.

I.     **Background**

Bissey is 53 years old, has a high school education, and last worked in

January of 2009.  (Filing No. 20-5 at ECF p. 2; Filing No. 20-6 at ECF pp. 6–7.)

Previously, Bissey worked for short periods in a variety of jobs, including

building decks, working on a hog farm, stocking vending machines, and

unloading trailers and collecting water samples at a corn flour mill.  (Filing No. 20-2 at ECF pp. 41–43.)

In January of 2011, Bissey applied for Disability Insurance Benefits and Supplemental Security Income, claiming that he was disabled by a combination of chronic obstructive pulmonary disease (COPD), sleep apnea, diabetes, and fibromyalgia.  (Filing No. 20-5 at ECF pp. 2–10; Filing No. 20-6 at ECF p. 6.) Bissey's applications were denied initially and upon review.  (Filing No. 20-4 at ECF pp. 2–9.)  An Administrative Law Judge heard Bissey's case on May 9, 2012 (Filing No. 20-2 at ECF pp. 36–61), and issued an opinion later that month deeming him not disabled (Id. at ECF pp. 20–31).  On July 16, 2013, the Appeals Council denied Bissey's request to review the ALJ's decision.  (Id. at ECF pp. 12–14.)

 Bissey now challenges several of the ALJ's findings, which represent the Social Security Administration's "final decision" under 42 U.S.C. § 405(g). E.g., Murphy v. Colvin, 759 F.3d 811, 815 (7th Cir. 2014).

### A. Bissey's Burden of Proof and the ALJ's Five-Step Inquiry

In order to qualify for benefits, Bissey must establish that he suffered from a disability as defined by the Social Security regulations.  A disability is an "inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 423(d)(1)(A). To establish a disability, a claimant must present medical evidence of an

impairment resulting "from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques.  A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [the claimant's] statement of symptoms."  20 C.F.R. §§ 404.1508, 416.908.

An ALJ must perform a sequential, five-step inquiry to determine whether a claimant is disabled:

(1) Was the claimant unemployed at the time of the hearing?

(2) Does the claimant suffer from a severe impairment or a severe combination of impairments?

(3) Are any of the claimant's impairments—individually or combined—so severe that the Social Security regulations have listed them as necessarily precluding the claimant from engaging in substantial gainful activity?

(4) Does the claimant lack residual functional capacity (RFC) to perform his past relevant work?

(5) Does the claimant lack RFC to perform any other work existing in significant numbers in the national economy?

See 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

The claimant is disabled only if the ALJ answers "yes" to all five questions.  See *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000).  An answer of "no" to any question ends the inquiry immediately and precludes the claimant from eligibility for benefits.  *Id.*  The claimant bears the burden of proof at Steps One through Four.  *Id.*  If the claimant succeeds, the

Commissioner bears the burden at Step Five of proving that the claimant is not disabled.  *Id.*

### B. The ALJ's Findings

At Step One, the ALJ found that Bissey had not engaged in substantial gainful activity since his alleged onset date of January 17, 2011.  (Filing No. 20-2 at ECF p. 22.)  At Step Two, the ALJ found Bissey severely impaired by COPD, obstructive sleep apnea, diabetes mellitus, fibromyalgia, obesity, and the residual effects of a right shoulder injury.  (*Id.*)

At Step Three, the ALJ found that none of Bissey's impairments—individually or combined—met or medically equaled the severity of a listed impairment.  (*Id.* at ECF pp. 22–24.)  The ALJ's analysis at Step Three is not at issue on judicial review.

Before moving on to Step Four, the ALJ found that Bissey's RFC would allow him to perform a restricted range of sedentary work.  (*Id.* at ECF p. 24; *see also* 20 C.F.R. §§ 404.1567(a), 416.967(a).)  At issue on this review are the ALJ's findings that Bissey could stand and walk for only two hours per day, climb ramps and stairs occasionally, endure only moderate exposure to certain respiratory irritants, and never engage in "overhead work," crouch, or climb ladders, ropes, or scaffolds.  (*See* Filing No. 20-2 at ECF p. 24.)

At Step Four, the ALJ found Bissey was unable to resume any of his past relevant work.  (*Id.* at ECF p. 30.)  At Step Five, however, the ALJ accepted a vocational expert's testimony that Bissey's RFC would allow him to perform

jobs such as "information clerk," "hand packager," and "inspector" as described in the *Dictionary of Occupational Titles.*  (*Id.* at ECF pp. 30-31.)

## II.     Standard of Review

The Court must affirm the ALJ's decision unless it lacks the support of substantial evidence or rests upon a legal error.  *E.g.,* *Nelms v. Astrue,* 553 F.3d 1093, 1097 (7th Cir. 2009); 42 U.S.C. § 405(g).  The ALJ—not the Court— has discretion to weigh the evidence, resolve material conflicts, make independent factual findings, and decide questions of credibility.  *Richardson v. Perales,* 402 U.S. 389, 399–400 (1971).  Accordingly, the Court may not re-evaluate facts, reweigh evidence, or substitute its judgment for the ALJ's.  *See* *Butera v. Apfel,* 173 F.3d 1049, 1055 (7th Cir. 1999).

Even where the ALJ has based his decision on a legal error, the Court may not remand the action if the error was harmless.  *McKinzey v. Astrue,* 641 F.3d 884, 892 (7th Cir. 2011).  The harmless error standard does not allow the ALJ's decision to stand just because it is otherwise supported by substantial evidence.  *E.g.,* *Spiva v. Astrue,* 628 F.3d 346, 353 (7th Cir. 2010). Substantial-evidence review ensures that the Administration has fulfilled its statutory duty to "articulate reasoned grounds of decision." *Id.*  In contrast, review for legal errors "ensure[s] that the first-line tribunal is not making serious mistakes or omissions." *Walters v. Astrue,* 444 F. App'x 913, 919 (7th Cir. 2011) (non-precedential order) (citing *Spiva,* 628 F.3d at 353).  Therefore, an error is harmless only if the Court determines "with great confidence" that remand would be pointless because no reasonable trier of fact could reach a

conclusion different from the ALJ's.  *McKinzey*, 641 F.3d at 892; *Sarchet v. Chater*, 78 F.3d 305, 309 (7th Cir. 1996).

## III.   Analysis

Bissey calls the Court's attention to three groups of flaws in the ALJ's opinion.  I find that none requires remand.

### A. The ALJ did not err in assessing Bissey's credibility.

Bissey first attacks the ALJ's assessment of his credibility.  "So long as an ALJ gives specific reasons supported by the record," a reviewing court must defer to her "credibility determination unless it is patently wrong." *Curvin v. Colvin*, 778 F.3d 645, 651 (7th Cir. 2015).  And a credibility determination is patently wrong only if it "lacks any explanation or support." *Murphy*, 759 F.3d at 816.

#### 1.  The ALJ's use of boilerplate language was harmless.

Bissey first argues that the ALJ erred by including "oft-criticized boilerplate language[1]" in assessing Bissey's RFC.  (*See* Filing No. 29 at ECF p. 8.)  An ALJ's use of this language can amount to error, *Bjornson v. Astrue*, 671 F.3d 640, 644–46 (7th Cir. 2012), but it is harmless so long as "the ALJ has otherwise explained his conclusion adequately, *Filus v. Astrue*, 694 F.3d 863, 868 (7th Cir. 2012).  Here, the ALJ thoroughly discussed Bissey's credibility in

---

[1]"After careful consideration of the evidence, I find the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms.  As discussed below, however, his statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment."  (Filing No. 20-2 at ECF p. 25.)

a four-page analysis examining discrepancies between Bissey's claims and his daily activities, medical records, and courses of treatment.  (*See* Filing No. 20-2 at ECF pp. 25–29.)  Specifically, the ALJ discussed medical findings of Drs. Shuyan Wang, Timothy Steiner, and Wesley Ratliff at page 7 of his opinion. (Filing No. 20-2 at ECF p. 26.)  These records support the ALJ's finding that Bissey's complaints of pain to doctors did not reach the same level of intensity as Bissey described at the hearing.  Consequently, the ALJ's use of the boilerplate language was harmless.

### 2. The ALJ did not err in evaluating Bissey's daily activities.

Bissey next argues that the ALJ erred by improperly inferring an ability to work from modest daily activities.  (*See* Filing No. 29 at ECF pp. 8–9.)  An ALJ must consider the consistency between the claimant's allegations and her daily activities when evaluating the claimant's credibility and RFC.  *See* 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i).  But an ALJ can commit error by failing to also acknowledge the claimant's limitations or assistance in performing those activities.  *E.g.*, *Moss v. Astrue*, 555 F.3d 556, 562 (7th Cir. 2013); *Craft v. Astrue*, 539 F.3d 668, 680 (7th Cir. 2008).  This is because "a person has more flexibility in scheduling [daily activities] than [full-time work], can get help from other persons . . . , and is not held to a minimum standard of performance, as she would be by an employer."  *Bjornson*, 671 F.3d at 647.

Here, the ALJ did not misrepresent Bissey's activities or ignore evidence of limitations or assistance.  The ALJ accurately cited Bissey's testimony that he could prepare easy meals like hamburgers or chili.  (Filing No. 20-2 at ECF

pp. 25, 45.)  The ALJ's failure to acknowledge Bissey's testimony that he regularly prepares similarly simple meals like soups and sandwiches (*see id.* at ECF p. 45) does not amount to a significant misrepresentation.  Likewise, the ALJ did not misrepresent the record by noting that Bissey "checks on his mother on a daily basis" instead of specifying that he calls her once per day but only visits her in person three times per week.  (*See id.* at ECF pp. 25, 44, 55.)

Bissey also argues that the ALJ erred by failing to explain how his completion of chores like dishes, vacuuming, and laundry indicate "an ability to work on a sustained basis."  (Filing No. 29 at ECF p. 9.)  Although the ALJ's reasoning here is not explicit, it is not difficult to trace: A person who engages in the volume and type of activities Bissey undertakes could be expected to handle the limited range of sedentary work of which the ALJ found him capable.  If the ALJ had based his RFC determination entirely on Bissey's ability to clean dishes and laundry, remand would be appropriate.  But the ALJ's attention to Bissey's daily activities represents an appropriate inquiry that is part of a much deeper credibility evaluation.

Given the depth of that evaluation, even if the ALJ erred on this count, the error would be harmless.  Even granting Bissey's argument, the credibility assessment cannot be described as "lacking any explanation or support," *Murphy*, 759 F.3d at 816, and therefore is not patently wrong.

### 3. The ALJ properly evaluated evidence of Bissey's airflow.

Evaluating the credibility of Bissey's allegations relating to COPD, the ALJ gave special attention to an examination by Dr. Wesley Ratliff in January

of 2009—very near Bissey's alleged onset date.  (*See* Filing No. 20-2 at ECF pp. 26–27.)  The ALJ noted that, at that examination, Bissey reported that he had been doing well and "working without difficulty."  (*See id.* at ECF p. 26; Filing No. 20-7 at ECF p. 3.)  The ALJ further observed that Bissey's performance on a spirometry test administered at that examination reflected improvement from a test administered in March of 2008.[2]  (*See* Filing No. 20-2 at ECF pp. 26–27; Filing No. 20-7 at ECF p. 4.)  This evidence, the ALJ explained, undermined Bissey's claims because it suggested his symptoms were less limiting at his alleged onset date than they were a year before, when he was able to work full-time.  (*See* Filing No. 20-2 at ECF p. 27.)

Contrary to Bissey's argument, the ALJ's analysis of this evidence was thorough, and I cannot find error in it without impermissibly reweighing the evidence.  Bissey urges the Court to consider that Bissey's spirometry score (1.98) "is not so far off" from the score that would have rendered him disabled under Listing 3.02 (1.25).  (*See* Filing No. 29 at ECF p. 9.)  But Bissey provides no support for that statement, and I am in no better position than the ALJ to assess the difference between two spirometry test results.

The same result confronts Bissey's observation that, in September of 2010, Dr. Ratliff expressed concern about Bissey's diabetes and sleep apnea and speculated that, although clinical tests showed stabilization of his COPD, his condition actually must be worsening because he continued to smoke.  (*See*

---

[2]This language about improvement from March 2008 is found at Filing No. 20-7 at ECF p. 4.

Filing No. 20-7 at ECF pp. 8–9; Filing No. 29 at ECF pp. 9–10.)  These notes do not contradict Dr. Ratliff's findings from earlier in 2010 or the ALJ's assessment of them.  Accordingly, I could not find error without substituting my judgment for the ALJ's.

### 4. Any error concerning Bissey's continued smoking was harmless.

While assessing Bissey's credibility, the ALJ twice noted that Bissey continued to smoke after his alleged onset date despite claiming to be disabled by respiratory impairments.  (*See* Filing No. 20-2 at ECF pp. 27–28.)  Bissey asserts error, citing two ways an ALJ may err by misapplying evidence of continued smoking.  (*See* Filing No. 29 at ECF p. 10.)  Neither requires remand here.

First, an ALJ errs by finding a claimant ineligible for benefits under 20 C.F.R. § 404.1530(a) for continuing to smoke contrary to prescribed treatment without also establishing that ceasing to smoke would restore the claimant's ability to work.  *See Rousey v. Heckler*, 771 F.2d 1065, 1069 (7th Cir. 1985). Here, though, the ALJ did not deny Bissey benefits because he failed to comply with prescribed treatment.  Rather, he criticized Bissey's credibility on that basis, and an ALJ must consider a claimant's treatment when assessing credibility.  *See* 20 C.F.R. §§ 404.1529(c)(3)(v), 416.929(c)(3)(v).

Second, given the addictive nature of smoking, an ALJ errs by criticizing a claimant's credibility for continuing to smoke.  *See Shramek v. Apfel*, 226 F.3d 809, 813 (7th Cir. 2000).  But this error is not always harmful.  *See*

*Shramek*, 226 F.3d at 814–15.  Again, the ALJ's references to Bissey's continued smoking were small parts of an otherwise extensive and properly executed credibility assessment.  Because the credibility determination was not patently wrong, I cannot recommend it as a reason for remand.

### B. The ALJ did not err in weighing the medical opinions.

Bissey argues in his reply brief that the ALJ erred in treating medical opinions issued by Dr. Shuyan Wang, a consultative examiner, and Linda Swango, a nurse practitioner who submitted a medical source statement of Bissey's ability to do work-related physical activities.  (*See* Filing No. 36 at ECF pp. 1–2.)  The ALJ did not err in either respect.

### 1. The ALJ's RFC determination includes Dr. Wang's suggested limitations.

Concluding his report, Dr. Wang expressed that Bissey would only be able to work at what he called "light duty jobs."  (*See* Filing No. 20-7 at ECF p. 43.)  Dr. Wang further noted that Bissey "may only be able to walk occasionally," would require restrictions on standing and climbing, would be unable "to do full squatting," and would need to avoid exposure to dust, fumes, and extremely cold, humid, or "gassy" environments.  (*See id.* at ECF pp. 43–44.)

Bissey takes issue with the Commissioner's argument before this Court that the ALJ's opinion should be affirmed in part because his RFC determination was more restrictive than Dr. Wang's.  (*See* Filing No. 35 at ECF p. 7; Filing No. 36 at ECF pp. 1–2.)  Bissey argues that Dr. Wang's findings

were inconsistent with light work and that his RFC determination therefore was not less restrictive than the ALJ's.  (*See* Filing No. 36 at ECF pp. 1–2.)

Regardless of Dr. Wang's terminology, I find no discrepancy between his proposed restrictions and those the ALJ applied.  The ALJ incorporated limited exposure to the environmental irritants Dr. Wang described.  He incorporated restrictions on climbing by limiting Bissey to occasional use of ramps or stairs and no use of ladders, ropes, or scaffolds.  He found that Bissey could not crouch, consistent with Dr. Wang's finding that Bissey could not "do full squatting."  (*See* Filing No. 20-7 at ECF pp. 43–44.)  And, he constrained the amount of time Bissey could walk or stand in a workday.

Accordingly, Bissey's argument does not prevail.  The ALJ's evaluation of Dr. Wang's opinion could hardly have been more favorable to Bissey.

## 2.  The ALJ properly evaluated Nurse Swango's opinion.

Nurse Swango submitted a form assessing various components of Bissey's RFC but clarified that the form reflected Bissey's answers—not her own.  (*See* Filing No. 20-8 at ECF pp. 24–29.)  The ALJ assigned Nurse Swango's report little weight for that reason.  (*See* Filing No. 20-2 at ECF p. 29.)

Bissey suggests the ALJ erred in doing so—either because he improperly discounted Nurse Swango's report as reflecting her subjective opinions or because he improperly discounted Bissey's testimony as subjective.  (*See* Filing No. 36 at ECF p. 2.)  The ALJ's opinion shows that neither is true: He granted Nurse Swango's "opinion" little weight because it was not *her* opinion.  Rather,

it reflected Bissey's own statements, which the ALJ addressed elsewhere in the opinion.  That reasoning is sound.

### C. The ALJ did not err by finding Bissey capable of jobs inconsistent with his RFC.

Finally, Bissey contends that the ALJ's finding at Step Five lacks the support of substantial evidence because the ALJ found Bissey capable of working jobs incompatible with his RFC.  (*See* Filing No. 29 at ECF pp. 10–12.) The ALJ found Bissey incapable of "overhead work."  (*See* Filing No. 20-2 at ECF p. 24.)  Bissey argues that the jobs the ALJ found him capable of performing are inconsistent with that RFC because they all require some amount of "reaching."  (*See* Filing No. 29 at ECF pp. 11–12.)  According to Bissey, this discrepancy undercuts the ALJ's Step Five determination and requires remand because the ALJ failed to resolve it.  (*See* Filing *id.* (citing SSR 00-4p; *Overman v. Astrue*, 546 F.3d 456, 464 (7th Cir. 2008)).)

Bissey's argument relies entirely on the existence of a conflict between the ALJ's RFC determination and his job determinations.  There is none.  The ALJ found Bissey incapable of overhead work.  The evidence Bissey has presented suggests only that the jobs in question require reaching.  He has not presented evidence suggesting that these jobs require *overhead* reaching or that "reaching" is synonymous with either "overhead reaching" or "overhead work."  Without such evidence, I cannot find that the ALJ's decision at Step Five lacked the support of substantial evidence or that it contained legal error.

**IV.    Conclusion**

For the foregoing reasons, I **RECOMMEND** that the Court affirm the

ALJ's decision.  Any objections to this Report and Recommendation must be

filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1).  Failure to file

timely objections within 14 days after service will constitute waiver of

subsequent review absent a showing of good cause for such failure.

**SO RECOMMENDED** the 7th day of August, 2015.

_____

WILLIAM G. HUSSMANN, JR.

Magistrate Judge

**Served electronically on all ECF-registered counsel of record.**